**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

| | |
|---|---|
| ERIC MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. |
| v. ) | |
| ) | Honorable: |
| JOSH PALADINO, individually and in his ) | |
| official capacity as City Council Member ) | **COMPLAINT** |
| and Mayor Pro-Tem of the City of Hillsdale,) | **AND JURY DEMAND** |
| ROB SOCHA, individually and in his ) | |
| official capacity as City Council Member of ) | |
| the City of Hillsdale, CITY OF ) | |
| HILLSDALE, a Michigan municipal ) | |
| Corporation, and JOHN DOES 1-10, ) | |
| individuals whose identities are currently ) | |
| unknown, believed to be members of a ) | |
| coordinated network affiliated with ) | |
| Hillsdale College and acting in concert with ) | |
| the named Defendants; ) | |

Jeffrey C. Hart (P69217)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiff
213 S. Ashley Street, Suite 400
Ann Arbor, MI  48104
(248) 417-7829 / (734) 436-0030 (fax)
jhart@shrr.com

**COMPLAINT**

## **INTRODUCTION**

This is a civil rights action arising from a systematic and coordinated campaign of retaliation, defamation, intimidation, and constitutional violations perpetrated by elected officials of the City of Hillsdale, Michigan against Plaintiff Eric Moore, a private citizen and successful businessman, in direct retaliation for his exercise of constitutionally protected First Amendment rights.

Over a period spanning from at least July 2025 through February 2026, Defendants Josh Paladino and Rob Socha — acting in their official capacities (and in their individual capacities at times) as elected City Council Members and in coordination with a network of private actors — subjected Plaintiff to a sustained campaign that included: an anonymous package delivered to his wife at their private home address; the deliberate public defamatory mischaracterization of his prior written communications at an official government meeting; coordinated social media amplification of a false and defamatory narrative; an uninvited visit to his place of business; an unsolicited and secretly recorded phone call in which Defendant Paladino admitted his retaliatory motive; and a series of follow-up contacts designed to intimidate Plaintiff from pursuing his legal rights.

The City of Hillsdale compounded these violations by officially ratifying Defendant Paladino's unconstitutional conduct through a recorded 2-6 vote of the

City Council against a resolution to retract and apologize for the false statements made about Plaintiff at an official government meeting.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, the First and Fourteenth Amendments to the United States Constitution, and the laws of the State of Michigan, seeking compensatory damages, punitive damages, exemplary damages, injunctive relief in the form of a formal public retraction, declaratory relief, and attorney's fees and costs.

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction) over Plaintiff's claims arising under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

2.      This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims, as those claims form part of the same case or controversy and arise from a common nucleus of operative facts as the federal claims.

3.      Venue is proper in the Western District of Michigan, Southern Division, pursuant to 28 U.S.C. § 1391(b) because the events and omissions giving rise to this action occurred in Hillsdale County, Michigan, which lies within this

3

judicial district, and because Defendants reside and conduct their official duties within this district.

## PARTIES

### Plaintiff

4.    Plaintiff ERIC MOORE ("Plaintiff" or "Moore" interchangeably) is a private citizen, resident of Hillsdale, Michigan, and successful local businessman. At all relevant times, Plaintiff was serving as Chair of the City of Hillsdale Planning Commission and was thereafter nominated for appointment to the Hillsdale City Library Board. Plaintiff has been actively engaged in civic matters of public concern in his community, including advocating for road safety improvements, raising concerns about the fitness of a planning commission nominee, and seeking appointment to the library board.

### Defendants

5.    Defendant JOSH PALADINO ("Paladino") is a duly elected member of the City Council of the City of Hillsdale, Michigan, and at all relevant times served as Mayor Pro-Tem. Defendant Paladino is affiliated with Hillsdale College and its network of associates and students. He is sued in both his individual and official capacities. At all relevant times, Defendant Paladino was acting under color

of state law when acting in his official capacity, and not under color of law when acting in his individual capacity.

6.     Defendant ROB SOCHA ("Socha") is a duly elected member of the City Council of the City of Hillsdale, Michigan. He is sued in both his individual and official capacities. At all relevant times, Defendant Socha was acting under color of state law with respect to his official conduct and acting as a private individual with respect to conduct he himself characterized as unofficial.

7.     Defendant City of Hillsdale is a municipal corporation organized under the laws of the State of Michigan, located in Hillsdale County, Michigan. The City of Hillsdale is a person within the meaning of 42 U.S.C. § 1983 and is liable pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), for its official policy, custom, practice, and ratification of unconstitutional conduct.

8.     Defendants John Does 1-10 are individuals whose true identities are presently unknown and whose identification is to be the subject of ongoing civil discovery, including subpoenas to cellular carriers and other entities. These individuals are believed to be affiliated with Hillsdale College and its Washington, D.C. satellite campus and are believed to have acted in concert with named Defendants in the coordinated campaign described herein. Upon identification through discovery, Plaintiff will seek leave to amend this Complaint to name these individuals.

## FACTUAL ALLEGATIONS

### I.    Background: Plaintiff's Protected Civic Activities

9.    Plaintiff Eric Moore is a private citizen who has engaged in sustained civic advocacy in Hillsdale, Michigan on matters of public concern, including road safety, local governance, and library policy.

10.    At all relevant times, Plaintiff was serving as Chair of the Hillsdale City Planning Commission.

### II. June 2025: Road Diet[1] Advocacy — First Protected Speech

11.    On or about June 2025, Plaintiff appeared before the Hillsdale City Council and publicly spoke in support of a proposed road diet safety improvement project. Plaintiff's advocacy was grounded in legitimate and documented public safety concerns regarding pedestrian safety at specific intersections within the City of Hillsdale.

12.    Defendant Paladino publicly opposed the road diet project.

13.    Defendant Socha, prior to the council vote, encouraged Plaintiff to attend the council meeting and voice his support for the road diet, citing Defendant

---

[1] A road diet is a transportation safety strategy that reconfigures a roadway, most commonly converting a four-lane undivided road into two through-lanes and a center, two-way left-turn lane. It reduces lane numbers and narrows driving space to calm traffic, enhance safety, and accommodate other uses like bike lanes.

6

Socha's own near accident at one of the affected intersections. Defendant Socha subsequently reversed his position and voted against grant funding for the road diet.

14.    As a consequence of the City Council's failure to timely implement the road diet safety improvements, a subsequent accident occurred at the location where the road diet would have improved pedestrian safety. Plaintiff's employee was killed in that accident.

**III. July 2025: Anonymous Package — Intimidation Campaign Begins**

15.    In or about July 2025, Plaintiff's wife received at their private home address an anonymous package containing a single can of Black Rifle Energy drink. The package contained no message, no return address, and no identification of the sender. No legitimate commercial or personal purpose has ever been identified for this delivery. The package was intended to, and did, intimidate Plaintiff and his wife.

16.    The purchase of the product was made using a gift card — a method of payment selected to obscure the identity of the purchaser. The account used to facilitate the purchase was registered under the name "Edmund Riddle," which upon information and belief is a deliberate pseudonym.

17.    Investigation revealed that the phone number associated with the purchase account carried a Virginia area code. Hillsdale College maintains a satellite campus in Washington, D.C. Defendant Paladino is affiliated with Hillsdale College

7

and its network of PhD students and associates, some of whom are believed to reside in or near Washington, D.C.

18.    Plaintiff reported the package to local law enforcement, which opened a criminal investigation. A subpoena was obtained that produced partial identifying information pointing to a cellular carrier that held the key identifying information regarding the sender.

19.    The newly-appointed prosecutor declined to pursue the second subpoena necessary to identify the sender through the cellular carrier, characterizing the incident as possible retail fraud — a characterization that is definitionally inapplicable to the conduct described, as retail fraud involves fraudulent purchases for the benefit of the perpetrator, not anonymous deliveries to third parties. The criminal investigation was closed.

20.    Plaintiff did not accept the retail fraud "brushing" characterization and believes, based on the totality of circumstances including the pseudonym, the gift card anonymization, the Virgina area connection to Hillsdale College's satellite campus, and Defendant Paladino's affiliation with the Hillsdale College network, that the package was sent as an act of intimidation connected to Plaintiff's civic activities.

21.    Civil discovery, including subpoenas to the cellular carrier identified in the criminal investigation as well as Walmart, is expected to identify the sender of

the package. Plaintiff reserves all claims related to this conduct pending such identification.

**IV. October 5, 2025: Plaintiff Raises Concerns About Planning Commission Nominee**

22. On or about October 5, 2025, Plaintiff, in his capacity as Chair of the Hillsdale City Planning Commission and as a private citizen with knowledge of relevant facts, sent an email to select members of the Hillsdale City Council expressing concerns about the fitness of Jeff Fazekas, who had been nominated by Defendant Paladino for appointment to the Hillsdale City Planning Commission.

23. Plaintiff's email documented that Mr. Fazekas had demonstrated dereliction in the maintenance of downtown commercial property, the neglect of which had required the City of Hillsdale to expend approximately $200,000 of taxpayer funds to demolish the property due to its negligent and unsafe condition. Plaintiff expressed the view that this demonstrated dereliction rendered Mr. Fazekas unfit for appointment to the Planning Commission.

24. This communication constituted protected speech on a matter of public concern — specifically, the fitness of a nominee for a public governmental position and the stewardship of taxpayer funds — and is protected by the First Amendment to the United States Constitution.

25. Upon information and belief, Defendant Paladino became aware of Plaintiff's October 5, 2025 email and its contents. Defendant Paladino subsequently

withdrew Mr. Fazekas's nomination to the Planning Commission. Defendant Paladino harbored animus toward Plaintiff as a result of Plaintiff's protected speech regarding the Fazekas nomination.

**V. January 2026: Plaintiff Nominated to Library Board — Paladino Retaliates**

26.     On or about January 20, 2026, Plaintiff was nominated for appointment to the Hillsdale City Library Board at a regular meeting of the Hillsdale City Council.

27.     During the council meeting, Defendant Paladino, speaking from the council dais in his official capacity as Council Member and Mayor Pro-Tem, made a statement about Plaintiff in which he characterized Plaintiff's 2023 email communication to the City Council and Library Board as "firmly advocating that the library could not regulate content regarding sexuality, vulgarity and violence for children's content."  In the alternative, and because of his ongoing animus against Plaintiff, Paladino was acting in his individual capacity and outside of his governmental scope and function when making such statements therefore disqualifying him from any immunity afforded to legislators under the Michigan Governmental Tort Liability Act (GTLA), MCL 691.1401-691.1419

28.     The statements made by Defendant Paladino were patently false and were never made by Plaintiff Moore. Plaintiff's 2023 email addressed risk management issues and concerns about book banning policy. It did not advocate for children's access to sexual, violent, or vulgar content in any form as Paladino falsely

stated. Defendant Paladino had access to the email at the time of his statement and knew or should have known that his characterization was false. Therefore, his conduct was intentional.

29.    When challenged to read the email that formed the basis of his characterization, the email's actual contents — addressing risk management and book banning policy concerns — were inconsistent with and directly contradicted Defendant Paladino's characterization.

30.    Defendant Paladino's false characterization was made with actual malice — with knowledge of its falsity or with reckless disregard for its truth or falsity — and was designed to portray Plaintiff in a false light, damage his reputation, and to cause other council members to vote against Plaintiff's nomination to the Library Board in retaliation for Plaintiff's prior protected speech, including his October 2025 email regarding the Fazekas nomination.

31.    Defendant Paladino's false and defamatory statement was made at an official government meeting, was recorded in the official minutes and audio record of that meeting and was communicated to all persons present at the meeting and to members of the public who subsequently accessed the meeting record and/or watched the meeting via the City of Hillsdale's official YouTube channel.

## VI.    January 21, 2026: Plaintiff Demands Retraction — Coordinated Intimidation Follows

32.    On January 21, 2026, at approximately 2:30 p.m., Plaintiff sent an email to members of the Hillsdale City Council formally requesting an apology and retraction of Defendant Paladino's false statements. This formal written demand constituted a petition to government for redress of a grievance and is protected by the Petition Clause of the First Amendment to the United States Constitution.

33.    On the same date, at approximately 4:15 p.m. — less than two hours after Plaintiff's retraction demand — Defendant Socha arrived uninvited at Plaintiff's place of business. Defendant Socha had no appointment and no official governmental purpose for this visit. Plaintiff perceived this visit as an attempt to gauge the seriousness of his retraction demand and his willingness to pursue legal action. The visit was consistent with a coordinated effort to assess and respond to Plaintiff's petition for redress.

34.    On the same date, at approximately 4:37 p.m. — approximately twenty-two minutes after Defendant Socha's departure from Plaintiff's office, and two hours and seven minutes after Plaintiff's retraction demand email — Defendant Paladino called Plaintiff on Plaintiff's personal cellular telephone. This was the first time Defendant Paladino and Plaintiff had ever spoken. Plaintiff did not know Defendant Paladino's telephone number and did not recognize the incoming call.

35.    During the initial moments of the call, Defendant Paladino stated that he was upset about Plaintiff's retraction demand email and the accusation of a "litmus test" for appointment to the Library Board in 2023. This statement constituted an explicit admission by Defendant Paladino that his call was motivated, at least in part, by Plaintiff's exercise of his constitutional right to petition the government for redress of a grievance.

36.    During the call, an automated announcement was heard indicating that the call was being recorded. Plaintiff immediately and directly asked Defendant Paladino whether the call was being recorded. Defendant Paladino confirmed that the call was being recorded. Plaintiff had not consented to being recorded prior to this disclosure and experienced the recording as a deliberate act of intimidation designed to capture Plaintiff in an embarrassing or legally disadvantageous statement to prevent him from pursuing his legal rights.

37.    The call lasted approximately three to four minutes. Defendant Paladino did not apologize, did not offer a retraction, and did not acknowledge any error in his council meeting statement. The call concluded without any resolution of Plaintiff's retraction demand.

38.    Plaintiff was extremely upset following the call. Plaintiff contemporaneously documented the events of the call, including Defendant

Paladino's admission of retaliatory motive and the recording, in personal notes created on the date of the call.

39.    Upon information and belief, Defendant Socha communicated with Defendant Paladino in the approximately twenty-two-minute period between Defendant Socha's departure from Plaintiff's office and Defendant Paladino's call to Plaintiff. Cellular carrier records are expected to confirm this communication through civil discovery.

40.    On January 21, 2026, at approximately 7:39 p.m., Plaintiff sent a second email to Defendant Paladino individually, again requesting an apology at the next city council meeting and requesting confirmation of receipt and understanding of the request by January 26, 2026. Defendant Paladino never responded to this email.

## VII. Social Media Amplification of the Defamatory Narrative

41.    Following the January 21, 2026 council meeting, Plaintiff's retraction demand email was shared on Facebook and Substack by individuals believed to be connected to Defendant Paladino and/or other City Council members aligned with Defendant Paladino. This sharing was coordinated with or directed by Defendant Paladino and/or Defendant Socha or was done with their knowledge and approval.

42.    Upon information and belief, the Hillsdale County Review Substack publication and Hillsdale County Review Facebook page is operated by or in

14

coordination with Hillsdale College PhD students affiliated with Defendant Paladino, the same network believed to be connected to the anonymous package described above.

43.    Social media comments associated with the shared content included statements characterizing Plaintiff as supporting pornography for children in the library — a characterization that is entirely false, highly defamatory, and directly traceable to Defendant Paladino's original false statement at the council meeting.

44.    Thomas More Law Center, which subsequently undertook pro-bono representation of Defendant Paladino, published a characterization of this matter on its organizational website framing it as a defense of a "Hillsdale Councilmember's Policy to Prevent Vulgar Books in Children's Section" — thereby republishing and amplifying the false narrative about Plaintiff in a public forum after litigation was threatened.

## VIII. February 2026: Continued Harassment and Intimidation

45.    On or about February 10, 2026, at approximately 4:07 p.m., Defendant Socha attempted to call Plaintiff on Plaintiff's personal cellular telephone. Plaintiff did not answer. Defendant Socha left a voicemail in which he characterized the call as unofficial, stated that he appreciated Plaintiff, and invited Plaintiff to call him if Plaintiff wished to talk.

46.    Defendant Socha's own characterization of his call as "unofficial" demonstrates that the call had no legitimate governmental purpose and was personal conduct outside the scope of his official duties as a council member. Plaintiff perceived this contact, in the context of all prior events, as a coordinated effort to discourage Plaintiff from pursuing civil rights claims against the City and its officials.

47.    Plaintiff has never initiated telephone contact with either Defendant Paladino or Defendant Socha at any time relevant to this action. All contacts described herein were initiated by the Defendants.

## IX. The City's Ratification of Unconstitutional Conduct

48.    Moore's attorney sent a formal demand letter to the City of Hillsdale and Defendant Paladino requesting a public retraction and apology for Defendant Paladino's false statements, and identifying the constitutional violations arising from the conduct described herein.

49.    In response to Plaintiff's demand, the City of Hillsdale placed a resolution before the City Council to retract Defendant Paladino's false statements and issue a formal apology to Plaintiff.

50.    The City Council voted 2-6 against the retraction resolution. Six council members voted to decline to retract a documented false statement made about a

16

private citizen at an official government meeting, after being formally notified that the statement was false and that it constituted a potential constitutional violation.

51.     This vote constitutes official ratification by the City of Hillsdale, acting through its governing body with final policymaking authority, of Defendant Paladino's unconstitutional conduct. The vote also constitutes deliberate indifference to a known constitutional violation and establishes *Monell* liability of the City of Hillsdale for the constitutional deprivations described herein.

## X. Pattern of Official Conduct — Additional Context

52.     Upon information and belief, the conduct of Defendant Paladino and other City Council members toward civic participants is part of a broader pattern of official conduct that has created a hostile environment for persons who engage with City government. The City of Hillsdale's former airport manager, who is also Plaintiff's wife, left her position citing the negative drama created by City Council conduct. Thereafter, four additional City department heads either resigned or retired early, also citing the negative drama and hostile environment created by City Council conduct as a contributing factor in their departures.

53.     This pattern of departures establishes a custom and practice of City Council conduct that creates unconstitutionally hostile conditions for civic engagement and public employment and provides additional support for Monell liability of the City of Hillsdale.

## COUNT I

### 42 U.S.C. § 1983 — First Amendment Retaliation
### Free Speech Clause — October 2025 Protected Speech
### (Against Defendant Paladino, Individually and in His Official Capacity)

54.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

55.    Plaintiff engaged in protected speech on matters of public concern when he sent his October 5, 2025 email to City Council members raising documented concerns about the fitness of Jeff Fazekas for appointment to the Planning Commission and identifying the approximately $200,000 in taxpayer funds expended due to Mr. Fazekas's negligent property maintenance. This communication addressed a matter of significant public concern — the fitness of a government nominee and the stewardship of public funds — and is protected by the Free Speech Clause of the First Amendment.

56.    Plaintiff also engaged in protected speech when he publicly advocated before the City Council in June 2025 for road safety improvements on a matter of demonstrated public safety concern.

57.    Defendant Paladino took adverse action against Plaintiff by publicly and falsely mischaracterizing Plaintiff's prior written communications at an official government meeting, in a manner specifically designed to damage Plaintiff's

18

reputation, defeat his appointment to the Library Board, and deter him from further protected speech activity.

58.    Defendant Paladino's adverse action was causally connected to Plaintiff's protected speech. Defendant Paladino withdrew the Fazekas nomination upon learning of Plaintiff's October 2025 email and thereafter harbored retaliatory animus toward Plaintiff. The temporal proximity between Plaintiff's protected speech and Defendant Paladino's adverse action, the absence of any legitimate non-retaliatory explanation, and the premeditated nature of Defendant Paladino's conduct — which required locating and mischaracterizing Plaintiff's 2023 email — all demonstrate retaliatory causation.

59.    Defendant Paladino acted under color of state law in his capacity as an elected City Council Member and Mayor Pro-Tem presiding over an official government meeting.

60.    Defendant Paladino's conduct would chill a person of ordinary firmness from continuing to exercise First Amendment rights. Plaintiff has in fact experienced a chilling effect on his civic engagement as a direct result of Defendant Paladino's conduct.

61.    The denial of the right to engage in protected speech on matters of public concern without government retaliation was clearly established at the time of Defendant Paladino's conduct.   Defendant Paladino deprived Plaintiff of his

constitutional rights. No reasonable official could have believed that deliberately mischaracterizing a constituent's prior written communications at an official government meeting, in retaliation for that constituent's exercise of First Amendment rights, was constitutionally permissible. *See Dye v. Office of the Racing Comm'n*, 702 F.3d 286 (6th Cir. 2012) and *Davis v. Robert*, 192 F.Supp.3d 847 (2016).

62.     As a direct and proximate result of Defendant Paladino's conduct, Plaintiff has suffered damages including reputational harm, emotional distress, loss of civic opportunity, and economic harm in an amount to be determined at trial.

63.     Defendant Paladino's conduct was intentional, malicious, and in reckless disregard of Plaintiff's clearly established constitutional rights, warranting an award of punitive damages against Defendant Paladino in his individual capacity.

### COUNT II

**42 U.S.C. § 1983 — First Amendment Retaliation**
**Petition Clause — January 21, 2026 Retraction Demand**
**(Against Defendant Paladino, Individually)**

64.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

65.     Plaintiff engaged in protected petitioning activity when he sent his January 21, 2026 retraction demand email to the City Council formally requesting that Defendant Paladino retract his false statements and issue a public apology. A

citizen's formal written demand to elected government officials for redress of a constitutional violation is among the most explicitly protected activities under the Petition Clause of the First Amendment to the United States Constitution.

66.    Defendant Paladino took adverse action against Plaintiff by calling Plaintiff on his personal cellular telephone approximately two hours and seven minutes after Plaintiff's retraction demand, without any prior relationship or communication history between the parties, recording the call without prior notice, and stating during the call that he was upset about Plaintiff's retraction demand — an explicit admission of retaliatory motive.

67.    The causal connection between Plaintiff's protected petition and Defendant Paladino's adverse action is established directly by Defendant Paladino's own admission during the call that he was upset about Plaintiff's retraction demand email.

68.    Defendant Paladino's conduct — calling a private citizen on his personal cellular phone, recording the conversation without prior consent, and expressing upset about that citizen's formal constitutional petition — was not a legislative act and does not receive legislative immunity of any kind. It was personal conduct by an individual who holds a legislative position, conducted entirely outside the scope of any legitimate governmental function.

69.     The right of a private citizen to petition government officials for redress of a constitutional violation without suffering official retaliation was clearly established at the time of Defendant Paladino's conduct. Defendant deprived Plaintiff of his constitutional rights. No reasonable official could have believed that calling a constituent on his personal cellular phone to express upset about receiving a formal retraction demand, while recording the call, was constitutionally permissible conduct.

70.     As a direct and proximate result of Defendant Paladino's conduct, Plaintiff has suffered damages including emotional distress, invasion of privacy, violation of his constitutional rights, and a chilling effect on his future exercise of Petition Clause rights, in an amount to be determined at trial.

71.     Defendant Paladino's conduct was intentional, malicious, and in reckless disregard of Plaintiff's clearly established constitutional rights, warranting an award of punitive damages against Defendant Paladino in his individual capacity.

## COUNT III
### 42 U.S.C. § 1983 — *Monell* Municipal Liability
### Official Policy, Custom, Practice, and Ratification
### (Against Defendant City of Hillsdale)

72.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

73.    The City of Hillsdale is liable under 42 U.S.C. § 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because the constitutional violations suffered by Plaintiff were caused by: (a) official ratification of Defendant Paladino's unconstitutional conduct by the City Council acting with final policymaking authority; (b) the exercise of final policymaking authority by Defendant Paladino in his capacity as Mayor Pro-Tem; (c) deliberate indifference to Plaintiff's known constitutional rights; and (d) a custom and practice of City Council conduct creating unconstitutionally hostile conditions for civic engagement, evidenced by the pattern of departures of city employees cited herein.

74.    The City Council's 2-6 vote against the retraction resolution constitutes official ratification of Defendant Paladino's unconstitutional conduct. The council members who voted against the resolution had received formal notice that Defendant Paladino's statement was false and that it potentially constituted a constitutional violation. Their deliberate decision to decline to remedy that violation constitutes official approval of unconstitutional conduct and the retaliatory reasoning behind it.

75.    The City of Hillsdale has no qualified immunity defense to a *Monell claim. Owen v. City of Independence*, 445 U.S. 622 (1980). The good faith of individual council members is not a defense to municipal liability under § 1983.

76.    The City of Hillsdale's *Monell* liability is independent of and not contingent upon the outcome of the individual claims against Defendant Paladino.

23

Even if Defendant Paladino were to successfully assert qualified immunity on any individual claim, the City's ratification liability is separately established by the council's official recorded vote.

77.    As a direct and proximate result of the City of Hillsdale's unconstitutional policy, custom, practice, and ratification, Defendant deprived Plaintiff of his constitutional right. Plaintiff has suffered damages in an amount to be determined at trial.

78.    Plaintiff is entitled to mandatory attorney's fees against the City of Hillsdale pursuant to 42 U.S.C. § 1988 upon prevailing on this claim.

## COUNT IV
### 42 U.S.C. § 1983 — Civil Conspiracy Under Color of Law
### (Against All Defendants)

79.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

80.    Defendants Paladino, Socha, and John Does 1-10 conspired together and with other persons known and unknown to deprive Plaintiff of his First Amendment rights under color of state law, in violation of 42 U.S.C. § 1983.

81.    The conspiracy is evidenced by: the coordinated sequence of Defendant Socha's office visit and Defendant Paladino's phone call within a twenty-two minute window on January 21, 2026; the coordinated social media amplification of the defamatory narrative by persons believed to be affiliated with the Defendants; the

24

anonymous package believed to have been sent by persons affiliated with Defendant Paladino's Hillsdale College network; the operation of the Hillsdale County Review Substack by persons affiliated with the Defendants; and the pattern of coordinated conduct spanning from July 2025 through February 2026.

82.    John Does 1-10, as private individuals acting in concert with state actors Paladino and Socha, acted under color of state law within the meaning of *Dennis v. Sparks*, 449 U.S. 24 (1980), and are subject to liability under 42 U.S.C. § 1983 as Defendants have deprived Plaintiff of his constitutional rights.

83.    As a direct and proximate result of this conspiracy, Plaintiff suffered all damages described herein, for which all conspirators are jointly and severally liable.

## COUNT V

### Defamation
### (Michigan Law — Against Defendant Paladino and John Does 1-10)

84.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

85.    Defendant Paladino made false and defamatory statements of fact about Plaintiff at the January 21, 2026 City Council meeting, specifically stating that Plaintiff's 2023 email communication "firmly advocat[ed] that the library could not regulate content regarding sexuality, vulgarity and violence for children's content." This statement was false. Plaintiff's 2023 email addressed risk management and

25

book banning policy concerns and contained no advocacy for children's access to inappropriate content whatsoever.

86.    Defendant Paladino's statement was defamatory under Michigan law because it imputed to Plaintiff conduct and characteristics that are inherently and immediately harmful to Plaintiff's reputation, specifically by portraying Plaintiff as an advocate for children's access to sexually explicit and violent content — a characterization so harmful that damages are apparent under law.

87.    Defendant Paladino published the defamatory statement to all persons present at the council meeting and, through the official public record, to all members of the public who accessed the meeting record via the City of Hillsdale's YouTube Channel. The statement was further published through coordinated social media dissemination by persons associated with Defendant Paladino, amplified into explicit statements that Plaintiff supported pornography for children.

88.    Defendant Paladino made the defamatory statement with actual malice — with knowledge of its falsity, having read or had access to the actual email — or with reckless disregard for its truth or falsity. In addition, Defendant made statements not in his official capacity or within his scope or function as a member of the city council, but instead (and as an alternative to the allegations set forth in Counts I-IV) as a private citizen with prior animus and in retaliation toward Plaintiff

26

Moore for his prior action voicing concerns about the appointment of Jeff Fazekas for appointment to the City Planning Commission.

89.    Plaintiff provided Defendant Paladino and the City of Hillsdale with timely written notice of the defamatory statement and a demand for retraction, satisfying the requirements of MCL 600.2911 for the recovery of exemplary and punitive damages. Defendant Paladino failed and refused to retract the defamatory statement.

90.    As a direct and proximate result of Defendant Paladino's defamatory statements, Plaintiff has suffered reputational harm, emotional distress, loss of civic opportunity, and economic harm in an amount to be determined at trial. Plaintiff is additionally entitled to exemplary damages under Michigan law due to Defendant Paladino's malicious publication on the City of Hillsdale's YouTube Channel.

## COUNT VI

### False Light Invasion of Privacy
### (Michigan Law — Against Defendant Paladino, Defendant Socha, and John Does 1-10)

91.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

92.    Defendants gave publicity to matters concerning Plaintiff that placed Plaintiff in a false light before the public by: (a) characterizing Plaintiff as an advocate for children's access to sexual, violent, and vulgar content; (b) amplifying

27

this characterization through coordinated social media distribution including statements that Plaintiff supported pornography for children; and (c) republishing and amplifying the false narrative through the Hillsdale County Review Substack and other platforms.

93.    The false impression created by Defendants' conduct — that Plaintiff advocates for children's access to pornographic or otherwise inappropriate content — would be highly offensive to a reasonable person and is, in fact, among the most reputationally devastating characterizations that can be made about a private citizen, particularly in a small conservative community.

94.    Defendants acted with knowledge of the falsity of the impression created or with reckless disregard for its falsity.

95.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages to his reputation, standing in the community, and emotional wellbeing in an amount to be determined at trial.

## COUNT VII

### Intentional Infliction of Emotional Distress
### (Michigan Law — Against Defendants Paladino and Socha)

96.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

28

97.    The conduct of Defendants Paladino and Socha, individually and in concert, was extreme and outrageous — so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency in a civilized society. This conduct includes, without limitation: publicly defaming Plaintiff at an official government meeting using a deliberately false characterization of his prior communications to the City Counsel members; coordinating an immediate response that included an uninvited visit to Plaintiff's place of business; calling Plaintiff unsolicited on his personal cellular telephone; recording that call without prior notice; admitting retaliatory motive during the call; coordinating social media amplification of the false narrative; and engaging in a sustained course of post-petition contact designed to intimidate Plaintiff from pursuing his legal rights — all directed at a private citizen who had done nothing more than exercise his constitutional rights.

98.    Defendants' conduct was intentional or in reckless disregard of the probability of causing emotional distress to Plaintiff.

99.    Plaintiff suffered severe emotional distress as a direct and proximate result of Defendants' conduct, including documented distress contemporaneously recorded on January 21, 2026, the date of the defamation, uninvited office visit, and recorded phone call.

100.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT VIII

### Invasion of Privacy / Intrusion Upon Seclusion
### (Michigan Law — Against Defendants Paladino and Socha)

101.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

102.   Defendant Paladino intentionally intruded upon Plaintiff's private affairs and seclusion by: calling Plaintiff on his personal cellular telephone without prior relationship, invitation, or legitimate purpose; recording the call using an automated recording system without prior notification; and using the call to express upset about Plaintiff's exercise of his constitutional petition rights — conduct that a reasonable person would find highly offensive.

103.   Defendant Socha intentionally intruded upon Plaintiff's private affairs and seclusion by: arriving uninvited at Plaintiff's private place of business without appointment, invitation, or legitimate governmental purpose; and by placing an unsolicited telephone call and leaving a voicemail characterized by Defendant Socha himself as unofficial — conduct that a reasonable person in Plaintiff's position, having just demanded a retraction from officials who had publicly defamed him, would find highly offensive and intimidating.

30

104.   As a direct and proximate result of Defendants' intrusions, Plaintiff has suffered emotional distress, violation of his privacy interests, and other damages in an amount to be determined at trial.

## COUNT IX

### Harassment
### (Michigan Law — Against Defendants Paladino and Socha)

105.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

106.   Defendants Paladino and Socha engaged in a course of conduct directed at Plaintiff — including the public defamation, the uninvited office visit, the unsolicited recorded phone call, the social media amplification, and the follow-up voicemail — that would cause a reasonable person to feel harassed, threatened, and emotionally distressed.

107.   Plaintiff did in fact experience harassment, emotional distress, and a reasonable apprehension of further retaliatory conduct as a result of Defendants' course of conduct.

108.   Plaintiff initiated none of the contacts described herein. All contacts were initiated by Defendants.

109.   As a direct and proximate result of Defendants' course of conduct, Plaintiff has suffered damages in an amount to be determined at trial.

## COUNT X

### Tortious Interference With Business Relations
### (Michigan Law — Against Defendants Paladino and John Does 1-10)

110.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

111.   Plaintiff is a successful businessman in Hillsdale, Michigan with established business relationships and reasonable expectations of future business relations in the community.

112.   Defendants, through the defamatory statements and coordinated social media campaign falsely characterizing Plaintiff as an advocate for children's access to inappropriate content, intentionally and improperly interfered with Plaintiff's existing and prospective business relationships.

113.   Defendants' conduct was intentional, improper, and specifically directed at damaging Plaintiff's standing in the community in which he conducts his business.

114.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages to his business relationships and economic interests in an amount to be determined at trial.

32

## COUNT XI

### Civil Conspiracy
### (Michigan Law — Against All Defendants)

115.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

116.   Defendants Paladino, Socha, and John Does 1-10, acting in concert, combined and agreed to accomplish the unlawful purpose of depriving Plaintiff of his constitutional rights, damaging his reputation, and intimidating him from exercising his legal rights, through a series of concerted acts including but not limited to those described herein.

117.   Each Defendant committed overt acts in furtherance of this conspiracy as described throughout this Complaint.

118.   As a direct and proximate result of this conspiracy, Plaintiff has suffered all damages described herein, for which all co-conspirators are jointly and severally liable under Michigan law.

## COUNT XII

### Spoliation of Evidence
### (Michigan Law — Against Defendant Paladino)

119.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

33

120. Defendant Paladino recorded the January 21, 2026 telephone call with Plaintiff using an automated recording system. The recording constitutes critical evidence relevant to this litigation, including evidence of Defendant Paladino's retaliatory motive, the content of the conversation, and the circumstances of the recording.

121. Upon the filing of this action and/or Plaintiff's prior written litigation hold notice, Defendant Paladino had an obligation to preserve this recording. If Defendant Paladino has destroyed, deleted, or failed to preserve the recording after receiving notice of this litigation, such conduct constitutes intentional spoliation of evidence.

122. Plaintiff is entitled to all appropriate remedies for spoliation of evidence, including adverse inference instructions, sanctions, and any other relief the Court deems appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Eric Moore respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, jointly and severally as applicable, and award the following relief:

A. Compensatory damages in an amount of $500,000 for all injuries suffered by Plaintiff, including but not limited to reputational harm, emotional distress, loss

of civic opportunity, loss of business relations, economic harm, and violation of constitutional rights;

B. Punitive damages against Defendants Paladino and Socha in their individual capacities, in an amount of $500,000 and sufficient to punish their willful, malicious, and reckless disregard for Plaintiff's constitutional rights and to deter similar conduct in the future;

C. Exemplary damages in the amount of $500,000 under Michigan law against Defendant Paladino for intentional and malicious publication of defamatory statements;

D. Injunctive relief requiring Defendant Paladino and/or the City of Hillsdale to issue a formal, specific, and public retraction of the false statements made by Defendant Paladino about Plaintiff at the January 21, 2026 City Council meeting, to be read aloud at a regularly scheduled public meeting of the Hillsdale City Council, stating specifically that: (i) Plaintiff's 2023 email addressed risk management and book banning policy concerns and a "litmus test" for board appointment; (ii) Plaintiff's email did not advocate for children's access to sexually explicit, violent, or vulgar content; and (iii) the City regrets any harm caused to Plaintiff's reputation by the mischaracterization of his communications;

E. Declaratory relief pursuant to 28 U.S.C. §§ 2201-2202 declaring that: (i) Defendant Paladino's conduct violated Plaintiff's rights under the First and

Fourteenth Amendments to the United States Constitution; (ii) the City of Hillsdale's 2-6 ratification vote constitutes unconstitutional official policy; and (iii) the coordinated conduct of the Defendants constituted civil conspiracy in violation of 42 U.S.C. § 1983 and Michigan law;

F. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable statute or rule;

G. Pre-judgment and post-judgment interest as permitted by law;

H. Such other and further relief as this Court deems just, equitable, and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the United States Constitution, Plaintiff Eric Moore hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated:  March 25, 2026

By: /s/ *Jeffrey C. Hart*
Jeffrey C. Hart (P69217)
SMITH HAUGHEY RICE & ROEGGE
Attorneys for Plaintiff Eric Moore
213 S. Ashley Street, Suite 400
Ann Arbor, MI  48104
(248) 417-7829
jhart@shrr.com

36